IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMANDA NICOLE RAWLS, : | |
| : | Case No. 2:13-CV-00412 |
| Plaintiff, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Kemp |
| COMMISSIONER OF : | |
| SOCIAL SECURITY, : | |
| : | |
| Defendant. : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Objection (Doc. 17) to the Magistrate Judge's March 18, 2014 **Report and Recommendation** (Doc. 16), recommending that the Court overrule Plaintiff's Statement of Errors (Doc. 9) and enter judgment in favor of the Commissioner. Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED** and the Court adopts the Magistrate Judge's **Report and Recommendation**.

### I. BACKGROUND

Plaintiff filed for Disability Insurance Benefits in April 2010, alleging disability beginning September 30, 2001, and lasting through her last date insured, September 30, 2003, due to a combination of physical impairments, most importantly her frequent and severe migraine headaches. (Tr. 19, 120, 171). Her applications were denied initially, and upon reconsideration (*id.* at 60-61), and after a hearing in January 2012, the Administrative Law Judge ("ALJ") issued a decision concluding that Plaintiff was not disabled, and retain the residual functional capacity to perform a full range of work with certain limitations (*id.* at 16-27). The Appeals Council denied Plaintiff's request for review on March 5, 2013, making the ALJ's decision final. (*Id.* at 1-3).

1

Plaintiff began receiving treatment for her severe headaches in 2002.  Plaintiff's first medical records date from early 2003, when Plaintiff was referred by her regular physician to Dr. Mankowski, on February 11, 2003.  (*Id.* at 273).  Although Plaintiff complained of severe headaches at least 15 days each month, the doctor found no neurologic defects.  (*Id.* at 255).  Instead, he recommended that she discontinue all use of over-the-counter pain medication, and he instead prescribed Imitrex, a drug used to treat migraines.  (*Id.* at 256).

Plaintiff saw Dr. Mankowski again in May 2003.  At that time, she reported that her headaches were less frequent and less severe.  (*Id.* at 253).  The doctor performed a successful lumbar puncture to relieve spinal pressure, and her spinal fluid tested normal.  (*Id.* at 269-71).  In June 2003, Dr. Mankowski saw Plaintiff again, and noted that he could not "totally exclude pseudotumor [cerebi] as a component" of her condition.  (*Id.* at 250-51).  He referred Plaintiff to Dr. Epstein for a second opinion.  (*Id.* at 252).

In August 2003, Plaintiff visited Dr. Epstein.  She reported that she had not had any migraines in the past month, and only three the prior month.  (*Id.* at 657-59).  In September 2003, Plaintiff told Dr. Epstein that she often missed her morning medication, leading to an increase in frequency and severity of headaches compared to when she was regularly taking her medication.  (*Id.* at 653).  In November 2003, Dr. Mankowski agreed with Dr. Epstein's recommendation that Plaintiff be treated for pseudotumor cerebi, but his notes also report that Plaintiff's condition continued to improve.  By September 2004, Plaintiff reported to Dr. Mankowski that she experienced only "mild headaches" occasionally.  (*Id.* at 246).  And EEG in October 2004 was normal.  (*Id.* at 257-58).

In the following months and years, however, Plaintiff's condition worsened, and by 2005 she underwent surgery to place a shunt inside her skull, performed by Dr. Shehadi.  This

procedure helped alleviate many of her symptoms. Several years later, Plaintiff began again to experience headaches, and she was hospitalized briefly for replacement of the shunt catheter. (*Id.* at 359-60). By 2010, Dr. Epstein noted that Plaintiff's symptoms were much reduced (though she was scheduled for another shunt revision in June 2010). He remarked that her headaches at that time were a nuisance, but he was not aware of any work limitations resulting from them. (*Id.* at 451-52).

On July 26, 2010, Dr. Teague, a state agency physician, reviewed certain records from 2003 and concluded that there was insufficient evidence at that time to show disability from the alleged onset date to the last insured date. (*Id.* at 461). Dr. McKee, another state agency physician, concurred. (*Id.* at 462).

After the hearing on January 10, 2012, the ALJ found, first, that Plaintiff met the insured requirements for disability benefits through September 30, 2003, but not thereafter, a conclusion not challenged on this appeal.

In her Statement of Errors, Plaintiff contends that the ALJ failed to evaluate her credibility properly, and thus gave too little weight to Plaintiff's complaints of her symptoms. (Doc. 9 at 4-6). Plaintiff also asserts that the ALJ erred by not appointing a medical expert to testify at her hearing, who would have provided testimony regarding the onset of her condition and its progressively worsening nature. (*Id.* at 7-10).

The Magistrate Judge found that, taking the record as a whole, "[o]ne could draw th[e] inference [that Plaintiff was disabled during the relevant period], but it is not a mandatory conclusion and there is substantial evidence to the contrary." (Doc. 16 at 9). Given the conflicting evidence, and the deferential standard of review, the Report and Recommendation concludes that the ALJ was justified in his determination. (*Id.* at 9-10). The Magistrate Judge

3

further found that whether to call a medical expert at the hearing is generally left to the ALJ's discretion, and in this case the medical records were not "so complex or difficult to understand that the ALJ needed an expert to interpret them." (*Id.* at 11). Accordingly, the Report and Recommendation suggests that the ALJ did not abuse his discretion, and recommends that his decision should be affirmed. (*Id.*).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Magistrate Judge's task is to determine if that decision is supported by "substantial evidence." 42 U.S.C. § 405(g). This Court, upon objection, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This review requires the Court to re-examine all the relevant evidence previously reviewed by the Magistrate Judge, to determine whether the findings of the Commissioner are in fact supported by "substantial evidence." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Gibson v. Sec'y of Health, Educ. & Welfare*, 678 F.2d 653, 654 (6th Cir. 1982).

This Court's review "is limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Ellis*, 739 F.2d at 248; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Houston v. Sec'y of*

*Health & Human Servs.*, 736 F.2d 365 (6th Cir.1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

## III.   ANALYSIS

Plaintiff first takes issue with the ALJ's determination that she lacked credibility, and in particular with his alleged failure to articulate the bases for finding her testimony of disabling symptoms to be less than fully credible. Plaintiff essentially argues that the ALJ was incorrect when he concluded that "the medical evidence of record . . . does not support her allegations that she could not work at [the relevant] time." (Tr. 25). Plaintiff responds that, although she may have experienced fewer headaches in June and July 2003, the improvement was "minimal and short term," and, upon consideration of the entire record, there is evidence to support the conclusion that she suffered "debilitating headaches that caused blurred vision, nausea, dizziness and light sensitivity," rendering her disabled. (Doc. 17 at 3-4).

The Commissioner is not permitted to reject allegations of disabling symptoms, including pain, solely because the objective medical evidence is lacking, but must consider other evidence, including Plaintiff's daily activities, the duration, frequency, and intensity of the symptoms, aggravating factors, medication, treatment, and other pertinent factors. 20 C.F.R. § 404.1529(c)(3). The ALJ must "consider the entire case record," including objective medical evidence and Plaintiff's own statements. SSR 96-7p.

As the Magistrate Judge notes, the record here contains little evidence of the severity of Plaintiff's symptoms, other than the records of Dr. Mankowski and Dr. Epstein, and Plaintiff's

5

own testimony. Based on this evidence, this Court agrees with the Magistrate Judge that the ALJ likely could have resolved this case in favor of Plaintiff, or against her; Plaintiff did report frequent headaches when she first saw Dr. Mankowski, but his and Dr. Epstein's notes indicate improvement in her condition with treatment. Given the conflicting evidence, and in light of the differences between how Plaintiff described her symptoms in her testimony and how the doctors' notes recorded their impressions of her symptoms, the Court must conclude that the ALJ was justified in his finding. Although this Court, as matter of first impression, might not agree, it cannot hold that the ALJ's finding is not supported by "substantial evidence."

Plaintiff's second objection is that the ALJ erred by not calling a medical expert at her administrative hearing. Plaintiff insists that an expert was necessary to help the ALJ determine the "onset and limitations associated with Plaintiff's ability to work." (Doc. 9 at 7). In general, whether to call such an expert is left to the discretion of the ALJ, and the Court may overturn the exercise of that discretion only if it appears that the use of a medical consultant was "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations." *Griffin v. Astrue*, No. 3:07-CV-00447, 2009 WL 633043, at *10 (S.D. Ohio Mar. 6, 2009) (quoting *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989)).

Plaintiff insists that a key issue in this case was the determination of the onset date of disability. (*See* Doc. 17 at 5). But Plaintiff's condition both deteriorated and improved, and the ALJ was not required to make any specific finding as to when, at some point after the last insured date, Plaintiff became disabled. Rather, a medical expert would have been helpful only to assist the ALJ in understanding and interpreting Plaintiff's medical records. As the Magistrate Judge explained, state agency physicians did interpret Dr. Mankowski's records; only Dr. Epstein's records were submitted after their review. And nothing in the record suggests that

these records rendered the medical issues so complex that the ALJ could no longer properly understand the entirety of the medical evidence without specialized assistance. Accordingly, the Court cannot conclude that the ALJ abused his discretion in failing to call a medical expert to testify at Plaintiff's hearing.

### IV. CONCLUSION

For these reasons, Plaintiff's Objections are hereby **OVERRULED**. The Court adopts the Magistrate Judge's **Report and Recommendation**. The case is **DISMISSED**.

**IT IS SO ORDERED.**

                                                                               /s/ Algenon L. Marbley
                                                                              **ALGENON L. MARBLEY**
                                                                              **UNITED STATES DISTRICT JUDGE**

**DATED: September 9, 2014**